IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MYCHAEL R. HATCHER,

                Petitioner,

   v.                                                                                          OPINION AND ORDER

WARDEN JOY TASSLER,[1]                                                      18-cv-75-wmc

                Respondent.

---

Among other offenses, a jury found petitioner Mychael R. Hatcher guilty of second-degree sexual assault of an intoxicated person in Brown County Circuit Court Case No. 2010-CV-770. He now seeks a writ of habeas corpus under 28 U.S.C. § 2254, arguing that he was denied effective assistance of counsel because his trial attorney failed to file a motion to suppress a statement he made to police before receiving the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966).[2] (Dkt. #28.) The court will deny his petition and dismiss this action for reasons explained below.

---

[1] When the petition was filed, Hatcher was confined at the Jackson Correctional Institution, where Lizzie Tegels is the warden. (Dkt. #1.) Because Hatcher is now at Kettle Moraine Correctional Institution, the court substitutes Warden Joy Tassler as the respondent under Rule 2(a) of the Rules Governing Section 2254 Cases.

[2] Although Hatcher raised other claims in his original and amended petitions (dkt. #1, #14), he has elected to proceed only with his ineffective-assistance claim for failing to file a motion to suppress under *Miranda*. (Dkt. #28.) Accordingly, the court confines its analysis to that claim.

BACKGROUND[3]

On July 2, 2010, Hatcher went out drinking with his girlfriend, Lisa Ewald, and two of Ewald's friends, Erin Peterson and T.T.[4] Later that night, Hatcher, Ewald, and T.T. returned to Ewald's residence in De Pere, which is in Brown County, Wisconsin. The following morning, T.T. called Peterson and told her that Hatcher had raped her. Peterson advised T.T. to call the police.

A. The Investigation

In response to the reported sexual assault, three police officers arrived at Ewald's apartment at 6:42 a.m. on July 3, 2010. Officer Brian Arkens located Hatcher in an upstairs bedroom and asked him to come downstairs. Once they were downstairs, Arkens advised Sergeant Jeremy Schnurer that Hatcher was the suspect. As officers separated the occupants of the residence, Schnurer asked Hatcher to step outside and speak with him. Schnurer explained that they were investigating an alleged sexual assault and that he was the suspect. When first questioned, Hatcher gave police a false name and denied having sex with the victim, stating that he "never touched her" because "she was so drunk." (Dkt. #23-4, at 1.)

---

[3] Unless otherwise indicated, the following facts are taken from the state court record, which is attached to the respondent's initial brief in opposition. (Dkt. #18.)

[4] The respondent refers to the victim by her initials T.T. and the Wisconsin Court of Appeals referred to her by the pseudonym "Williams." (Dkt. #18-2.) Because the case involves a sexual assault, this court will also refer to the victim by her initials ("T.T.") to protect her privacy. *See* 18 U.S.C. § 3771(a)(8) (stating that crime victims have "[t]he right to be treated with . . . respect for the victim's dignity and privacy"); *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses").

After additional questioning, in which Hatcher continued to deny having sex with T.T. while giving a false name, Hatcher was taken to the police station in handcuffs, fingerprinted for identification, and advised of his *Miranda* rights. During the ensuing interrogation by a detective, Hatcher admitted having sex with T.T., but claimed that it was consensual. Hatcher was then charged in a criminal complaint with the following counts as a repeat offender: second-degree sexual assault of an intoxicated person (Count One); obstructing or resisting an officer (Count Two); and misdemeanor bail jumping (Count Three).[5]

In the meantime, an officer escorted T.T. to a local hospital for a physical examination by a Sexual Assault Nurse Examiner (a "SANE nurse"), who collected swabs for DNA testing. Hatcher was identified as the source of male DNA recovered from sperm inside T.T.'s vagina. Photographs taken by an officer also showed bruising on T.T.'s back and shoulder that were consistent with being held down. In addition, a report showed that T.T.'s blood alcohol concentration was .083 grams per 100 milliliters at the hospital on

---

[5] In particular, Hatcher was charged with violating Wis. Stat. § 940.225(2)(cm), which prohibits:

> sexual intercourse with a person who is under the influence of an intoxicant to a degree which renders that person incapable of giving consent if the defendant has actual knowledge that the person is incapable of giving consent and the defendant has the purpose to have sexual contact or sexual intercourse with the person while the person is incapable of giving consent.

(Tr. 2a (dkt. 18-19) at 113.) The obstruction charge was based on the fact that Hatcher gave a false name when he was initially questioned by police (*id*. at 118), and the bail jumping charge was based on the fact that, by committing the obstruction offense, Hatcher violated the conditions of his bond in another case, which required him to have no further law violations (*id*. at 119-21). Two other charges (disorderly conduct and identity theft) were dropped by the state on the first day of trial.

the morning of July 3, 2010. The report estimated that T.T., who was 5'2" and weighed 105 pounds, had a blood alcohol concentration between .143 and .233 grams per 100 milliliters at the time of the sexual assault, and between .183 and .333 grams per 100 milliliters at the time she left the bar the previous evening. By way of comparison, a detective clarified (later during the trial) that the prohibited blood alcohol concentration for driving while under the influence of intoxicating beverages is .08 grams per 100 milliliters.

**B. The Trial**

At trial, T.T. testified that she and Peterson met up with Ewald at the Stadium View bar in Green Bay at around 5:00 or 5:30 p.m. on July 2, 2010, and that Hatcher joined them later. T.T. estimated that she consumed five or six beers and at least two shots. Peterson testified that she left the bar first because she had other plans that night.

Sometime after 10:00 p.m., T.T., Ewald, and Hatcher departed for Ewald's apartment, where T.T. was planning to spend the night. Because T.T. was drunk, Ewald testified that she had to be helped from the car and carried up the stairs to her spare bedroom. Hatcher then walked to a nearby bar and returned at closing time.

T.T. testified that she passed out in Ewald's car on the way home from the bar and had no recollection of being carried to the spare bedroom. The next thing she remembered was Hatcher being on top of her and forcing his penis into her vagina from behind as she was laying face down on the bed. T.T. testified that she was unable to move or talk during

4

the incident, which occurred in the middle of the night. She then passed out. When T.T. awoke that morning, she called Peterson and then the police.

Officer Arkens testified that when he arrived at Ewald's residence that morning, Ewald confirmed that T.T. had been "extremely intoxicated" the previous evening. Sergeant Schnurer testified that when he asked to speak with Hatcher about the alleged sexual assault, Hatcher identified himself as "Darren James" and denied any involvement.[6] When Schnurer asked Hatcher if he had consensual sexual contact with T.T., his response was that he "never touched her, she was so drunk." Schnurer gave Hatcher several more opportunities to tell him what happened, but Hatcher continued to deny having any sexual contact with T.T. At that point, Hatcher was taken to the police station and interviewed by a detective.

In contrast, after arriving home from the local bar at around 2:30 a.m., Hatcher testified that he brought T.T. a glass of water, they had a conversation and then had consensual sex. Hatcher admitted that both of them were "pretty drunk" that night, but implied that T.T. was not too intoxicated to consent. Hatcher further explained that he initially lied to police about whether he had consensual sex with T.T. because his girlfriend Ewald was nearby when he was being questioned in the apartment.

The jury found Hatcher guilty of second-degree sexual assault of an intoxicated person, as well as guilty on the other counts of obstructing an officer and bail jumping. On

---

[6] According to the police report, Hatcher was eventually identified by the FBI through his fingerprints. (Dkt. #23-4, at 2.) At that time, he had multiple outstanding warrants out of the Brown County Sheriff's Office for domestic violence, battery, and probation violations. (*Id.*)

the sexual assault offense, the circuit court sentenced Hatcher to 15 years of initial confinement followed by 15 years of extended supervision. (Dkt. #18-1.) As for the other counts of conviction, the circuit court sentenced Hatcher to 1 year of initial confinement followed by 1 year of extended supervision, with all sentences to run concurrently. (*Id*.)

**C.  Post-Conviction Proceedings**

Hatcher filed a post-conviction motion, arguing that he was denied effective assistance of counsel because his trial attorney did not file a motion to suppress his initial statement to Sergeant Schnurer in which Hatcher denied touching T.T. because "she was so drunk," having been given without the benefit of any *Miranda* warnings. The circuit court held an evidentiary hearing on that motion. Hatcher testified that after being awakened by police at Ewald's residence early on the morning of July 3rd, Sergeant Schnurer asked him to come outside and sit on the porch. Then after Schnurer frisked Hatcher, who was wearing only shorts and shoes, Schnurer questioned Hatcher for 30-40 minutes about whether he had sex with T.T. Hatcher also asserted that Schnurer's report was incorrect and that he initially denied having sex with T.T. because *he* was too drunk. During this initial period of questioning, Hatcher testified further that Schnurer refused to allow him to use the bathroom or get a cigarette out of the kitchen. Finally, Hatcher's defense counsel testified that he considered filing a *Miranda* motion, but had concluded that the circumstances were not of the sort that warranted a motion to suppress.

The circuit court found Hatcher's attorney "credibly testified at the postconviction hearing that when he evaluated Hatcher's case he did not see a *Miranda* violation." (Dkt. #18-5, at 14.) The court also found Hatcher had failed to prove that he was subjected to

6

a "custodial interrogation" when questioned by Schnurer at the scene of the offense or that Hatcher would have prevailed on a motion to suppress under *Miranda* if one had been filed. (*Id*. at 17.)  "[B]ecause a motion to suppress would have been meritless," and Hatcher had failed to establish prejudice, the circuit court found defense counsel was not ineffective or deficient. (*Id*. at 29.)

The Wisconsin Court of Appeals affirmed the circuit court's decision, concluding that Hatcher failed to show he was "in custody at the time he made the challenged statement, such that *Miranda* warnings were required," and thus, Hatcher failed to establish that his trial attorney was ineffective for failing to file a suppression motion. (Dkt #18-2, ¶ 76.) The Wisconsin Supreme Court summarily denied Hatcher's petition for discretionary review. (Dkt. #18-3.)

OPINION

Hatcher now seeks a federal writ of habeas corpus, claiming that his trial attorney's failure to file a motion under *Miranda* to suppress his initial statement to police denying having sex with T.T. because "she was so drunk" constituted ineffective assistance of counsel. (Dkt. #28.) Because T.T.'s ability to consent was a central issue at trial, the State highlighted Hatcher's statement during its opening statement, during Sergeant Schnurer's testimony, and again during both closing and rebuttal arguments. (Tr. 1a (dkt. #18-17) 126:14-15; Tr. 1p (dkt. #18-18) 140:15; Tr. 2a (dkt. #18-19) 130:14, 139:4, 149:23-24, 150:8-9.) The State also used the statement to impeach Hatcher's testimony that T.T. was not too intoxicated to consent. (Tr. 2a (dkt. #18-19) 67:23-68:1, 69:13-20.)

7

After finding that defense counsel was not ineffective, the Wisconsin Court of Appeals rejected Hatcher's claim under *Strickland v. Washington*, 466 U.S. 668 (1984) and *State v. Jackson*, 229 Wis. 2d 328, 600 N.W.2d 39 (Ct. App. 1999). In particular, the court of appeals noted under *Jackson*, that absent proof a suppression motion would have succeeded, defendant failed to show ineffective assistance. *Id*. at 344 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Because Hatcher's ineffective-assistance claim was adjudicated on the merits in state court, this ruling is subject to a "highly deferential standard" of review under 28 U.S.C. § 2254(d). *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (§ 2254(d) "imposes a 'highly deferential standard for evaluating state-court rulings,' . . . [which] 'demands that state-court decisions be given the benefit of the doubt.'") (citations omitted).

Under this deferential standard, a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  In particular, an "unreasonable application" only occurs "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). This is a high bar: the state court's application of federal law "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (internal quotation marks and citation omitted). Thus, a state prisoner seeking habeas relief "must show that the state court's ruling on the claim being presented in federal court

8

was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Further, to the extent that a petitioner challenges a factual finding on which the state court's adverse ruling rests, he must show that the finding was unreasonable in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). State court findings of fact and credibility determinations are presumed correct on federal habeas review, unless the petitioner rebuts that presumption with "clear and convincing" evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Woolley v. Rednour*, 702 F.3d 411, 426-27 (7th Cir. 2012). The presumption of correctness also applies to factual findings made by a state court of appeals based on the trial-court record. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

For reasons discussed in more detail below, Hatcher does not show that the last state court to analyze his claim -- the Wisconsin Court of Appeals -- unreasonably denied relief or that its decision was based on an unreasonable determination of the facts. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (holding that when a state supreme court decision does not come accompanied by reasons, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale").

As the Wisconsin Court of Appeals explained, to prevail on an ineffective-assistance claim a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice resulted from that deficiency. *Strickland,* 466 U.S. at

9

687-88, 693. So, too, must judicial review of trial counsel's performance "be highly deferential," with "every effort … made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690).

To establish prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Specifically, where defense counsel's failure to file a motion to suppress is the principal allegation of ineffectiveness, the defendant must prove that the motion was meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman*, 477 U.S. at 375; *see also Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006) ("When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious.") (citations omitted). Otherwise, "counsel cannot have been ineffective for failing to pursue what . . . would have been a meritless suppression motion." *United States v. Stewart*, 388 F.3d 1079, 1085 (7th Cir. 2004).

10

Petitioner contends that counsel should have filed a motion to suppress his statement to Sergeant Schnurer because it was made before he received his *Miranda* warnings, which required police to advise him that: he could remain silent; anything he said could be used against him in court; and he was entitled to an attorney, either retained or appointed. *Miranda*, 384 U.S. at 444. Since *Miranda* warnings are due only when a suspect interrogated by the police is "in custody," *Thompson v. Keohane*, 516 U.S. 99, 102 (1995), the merits of a motion to suppress turns on whether petitioner was, in fact, "in custody" when he denied touching T.T.

"Custody," when used in reference to *Miranda*, "is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 562 U.S. 499, 508-09 (2012). Determining whether someone is in custody, therefore, depends upon "the objective circumstances of the interrogation." *Stansbury v. California*, 511 U.S. 318, 323 (1994) (per curiam). "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id*. at 322 (internal quotations and citations omitted). "Factors to consider in assessing custody 'include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning.'" *Stechauner v. Smith*, 852 F.3d 708, 715 (7th Cir. 2017) (quoting *Howes*, 565 U.S. at 509 (citations omitted)).

11

Nevertheless, no one factor is "dispositive of the custody issue." *Stansbury*, 511 U.S. at 325.

In considering petitioner's ineffective-assistance claim, the Wisconsin Court of Appeals summarized Sergeant Schnurer's trial testimony about their interaction on the morning of July 3, 2010, along with Hatcher's testimony at the post-conviction hearing, as follows:

> ¶ 59 At trial, sergeant Jeremy Schnurer testified he was one of the officers who responded to [Ewald's] residence on the morning of July 3, 2010. After entering the residence, Schnurer observed Hatcher "walking down the stairs from upstairs in the apartment." Schnurer asked Hatcher to come outside and talk to him. Hatcher gave Schnurer a false name and stated he did not know "what was going on." Schnurer then informed Hatcher the police were there to investigate a sexual assault and believed Hatcher was a possible suspect. Hatcher responded he "did not do anything." Schnurer then asked whether Hatcher had consensual sex with [T.T.], and Hatcher "stated, no, she was way too drunk." After refreshing his recollection using his report, Schnurer testified Hatcher stated, "I never touched her, she was so drunk." Schnurer further testified he "gave [Hatcher] several opportunities to tell [police] what had happened," but Hatcher "still denied that he had any sexual contact, consensual or not consensual, with [T.T.]."
>
> ¶ 60 In his postconviction motion, Hatcher asserted his trial attorney was ineffective by failing to move to suppress Hatcher's statement, made before he received *Miranda* warnings, that he did not have sexual contact with [T.T.] because she was too drunk. Hatcher contended *Miranda* warnings were required because that statement was the product of a custodial interrogation.
>
> ¶ 61 At the postconviction hearing, Hatcher testified he was asleep in [Ewald's] apartment on the morning of July 3, 2010, when he was awoken by officer Brian Arkens, who "called out" to him, "[H]ey buddy, get up, come down and talk to me." Hatcher was wearing only a pair of shorts. Arkens did not allow Hatcher to get dressed or use the bathroom but did allow him to put on shoes.
>
> ¶ 62 When Hatcher went downstairs, [Ewald] was in the living room. Schnurer called Hatcher out onto the porch, frisked him, and told him to sit down. Schnurer asked Hatcher "if [he] knew what was going on," and

>Hatcher responded he did not know why the officers were there. Schnurer then told Hatcher the police were investigating a sexual assault, and he was "the suspect." Schnurer asked Hatcher "if [he] knew what was going on now," and Hatcher "told him no."
>
>¶ 63 Hatcher testified he was on the porch for thirty to forty minutes, during which time Schnurer never left his side. Schnurer "kept asking" if Hatcher had sex with [T.T.]. Hatcher testified, "At first I denied it. And then — I told him, I didn't touch her, I was too drunk. Because I was intoxicated myself." Hatcher testified Schnurer was armed during the questioning but never drew his weapon. Schnurer denied Hatcher's request to use the bathroom and also denied his request to get a cigarette from the kitchen, which was located on the first floor of the residence.
>
>¶ 64 Hatcher testified [T.T.] was in the upper floor of [Ewald's] residence while he was being questioned on the porch. When [T.T.] was escorted from the residence, Schnurer "made [Hatcher] stand up, come down the stairs, walked [him] to the neighbor's picket fence, [and] told [him] to . . . stare at the wall and don't move." Schnurer told Hatcher this was so he could not look at [T.T.]. After a few minutes, Schnurer directed Hatcher back to the porch. Schnurer again denied Hatcher's request to use the bathroom. Ten to twenty minutes after [T.T.] left, Hatcher was handcuffed and transported to the police station. At the station, he was given *Miranda* warnings before being questioned by another officer. Hatcher admitted to that officer that he had sex with [T.T.]. He testified at the postconviction hearing that he had denied having sex with [T.T.] when questioned by Schnurer because [Ewald], his girlfriend, was standing "in earshot" in the living room.

(Dkt. #18-2, ¶¶ 59-64.) Hatcher does not dispute any of these findings, which are supported by the state court record and are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1); *Woolley*, 702 F.3d at 426-27.

The Wisconsin Court of Appeals also considered the testimony given by defense counsel at the post-conviction hearing and his explanation for not filing a motion to suppress:

>¶ 65 Hatcher's trial attorney testified at the postconviction hearing that he never considered filing a motion to suppress Hatcher's statement that he did not have sex with [T.T.] because she was too drunk. Counsel stated

13

he did not think Hatcher's statement to that effect was "all that big of a deal." Counsel later clarified:

> My recollection is that it wasn't the sort of issue that . . . warranted a suppression motion. Obviously, my common practice is to look at all of those particular issues and determine whether or not there is anything that is worthy of challenging when it comes to Constitutional rights. And my recollection would be that that — it didn't rise to the level where I thought a motion should be filed.

(Dkt. #18-2, ¶¶ 59-65.)  Similarly, the circuit court found defense counsel's testimony credible (dkt. #18-5, at 14), and this finding -- which Hatcher does not attempt to refute -- is also entitled to the "presumption of correctness" on federal habeas corpus review.  28 U.S.C. § 2254(e)(1).

After analyzing Hatcher's claim under the factors relevant to a *Miranda* custody analysis, the Wisconsin Court of Appeals further agreed with the circuit court's finding that petitioner was not "in custody" when the statement was made.  (Dkt. #18-2, ¶ 68; dkt. #18-5, at 29.)  Specifically, applying these factors, the Wisconsin Court of Appeals concluded that Hatcher failed to demonstrate that he was in custody when the statement was made:

> ¶ 70 At first blush, the circumstances surrounding Schnurer's questioning of Hatcher appear to support Hatcher's argument that he was in custody. Hatcher was awoken from sleep to find a police officer (Arkens) in the room.[] Hatcher was wearing only a pair of shorts, and Arkens did not allow him to get dressed, other than putting on shoes, or use the bathroom. Arkens directed Hatcher to go downstairs. Once downstairs, a second officer (Schnurer), directed Hatcher onto the porch, where he frisked Hatcher and told him to sit down. Schnurer then questioned Hatcher regarding the sexual assault of [T.T.] for about thirty to forty minutes, during which time Schnurer did not leave Hatcher's side. While they were on the porch, Schnurer denied Hatcher's requests to use the bathroom and get a cigarette from the kitchen. When [T.T.] was escorted out of the residence, Schnurer directed Hatcher to walk toward a neighbor's fence and stand facing it until

14

[T.T.] had gone. After that, Schnurer directed Hatcher back to the porch and again denied his request to use the restroom. On these facts, we question whether a reasonable person in Hatcher's position would have felt free to terminate the interview and leave the scene. *See Lonkoski*, 346 Wis. 2d 523, ¶ 27, 828 N.W.2d 552. We find it particularly significant that, beyond simply telling Hatcher where to go, Schnurer and Arkens repeatedly denied Hatcher's requests to do things like get dressed, use the bathroom, and get a cigarette.

¶ 71 The problem with Hatcher's argument regarding custody, however, is that the operative inquiry is whether Hatcher was in custody *at the time he made the statement he now seeks to suppress* — namely, that he did not have sex with [T.T.] because she was too drunk. Thus, we may not consider any evidence regarding events that are alleged to have occurred after Hatcher made that statement. Unfortunately, the record is not clear as to when during the questioning Hatcher made the challenged statement. Nevertheless, it is apparent from Hatcher's testimony at the postconviction hearing that he made the statement before [T.T.] was escorted from the residence. Accordingly, in determining whether Hatcher was in custody for *Miranda* purposes, we may not consider evidence that Schnurer: directed Hatcher to walk toward and stand facing a neighbor's fence until [T.T.] had gone; directed Hatcher back to the porch after [T.T.] left; and denied Hatcher's request to use the restroom once he was back on the porch.

¶ 72 It is also clear from Hatcher's postconviction testimony and Schnurer's trial testimony that the following events occurred before Hatcher made the challenged statement: Hatcher was awoken from sleep to find Arkens, a police officer, in the room; Hatcher was wearing only shorts, and Arkens refused to let him get dressed or use the bathroom; Arkens did allow Hatcher to put on shoes; Arkens directed Hatcher downstairs; and, once downstairs, Schnurer directed Hatcher onto the porch and frisked him. Although it is a close case, on these facts alone, we cannot conclude Hatcher was in custody.

¶ 73 That Hatcher was questioned soon after waking to find a police officer in his room weighs in favor of custody because it shows Hatcher was in a relatively vulnerable position. The same is true of the fact that Hatcher was not fully dressed. In addition, Hatcher's movements were controlled by the officers, and Arkens refused to let him get dressed or use the bathroom. These facts further weigh in favor of custody, as does the fact that Hatcher was frisked when he stepped onto the porch. *See Lonkoski*, 346 Wis. 2d 523, ¶ 28, 828 N.W.2d 552.

¶ 74 On the other hand, however, Hatcher was not handcuffed or physically restrained in any manner. *See id*. Although the officers were armed, they did not draw their weapons. *See id*. The questioning took place on the porch of Hatcher's girlfriend's residence — a location familiar to Hatcher— rather than in a police vehicle or at the police station. *See id*. The record reflects that at least three officers were present at the residence, but Schnurer appears to have been the only officer present when Hatcher made the challenged statement. *See id*. The questioning on the porch lasted only thirty to forty minutes, which is not particularly lengthy. *See id*., ¶ 31 (referring to a thirty-minute interrogation as "relatively short"). We do not know precisely when Hatcher made the challenged statement. However, the record strongly suggests it was made near the beginning of the questioning. *See supra*, ¶¶ 59, 63. Further, while Hatcher was not specifically told he was free to leave, he also was not specifically told he could not leave. All of these facts weigh against a conclusion that Hatcher was in custody, and, in our opinion, are sufficient to outweigh the facts supporting a contrary conclusion that are discussed in the preceding paragraph. *See supra*, ¶ 73.

¶ 75 In addition to the above evidence, Hatcher testified at the postconviction hearing that, while on the porch, he asked Schnurer for permission to use the bathroom and go inside to get a cigarette, but Schnurer denied those requests. These additional facts, when combined with the facts discussed above at ¶ 72, would likely be enough to tip the balance in favor of custody. However, we cannot discern from the record whether Hatcher's requests to use the bathroom and get a cigarette were made before or after his statement that he did not have sex with [T.T.] because she was too drunk.[]

(Dkt. #18-2, ¶¶ 70-76) (footnotes omitted, emphasis in original).

Because petitioner failed to meet his burden to establish that he was in custody at the time he made the challenged statement, the Wisconsin Court of Appeals concluded that he did not show his defense counsel was ineffective for failing to file a motion to suppress. (*Id*. at ¶ 76.) Ineffective-assistance claims that are adjudicated on the merits in state court, as in this case, are entitled to an added level of deference on federal habeas corpus review under § 2254(d). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not

16

satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, this standard is "doubly deferential" on federal habeas corpus review. *Id*; *see also Richter*, 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem (citations omitted)).

As both the circuit court and the Wisconsin Court of Appeals found, Hatcher did not come forward with sufficient evidence to find that he was in custody at the time he denied having any sexual contact with T.T. because she was "so drunk." To the contrary, the available facts support the Wisconsin Court of Appeals' conclusion that Hatcher made the remark early on during Sergeant Schnurer's initial efforts to question him and was not made under circumstances that amounted to custodial interrogation. Thus, Hatcher has not shown that his trial attorney was deficient for failing to file a meritless suppression motion. *See United States v. Nolan*, 910 F.2d 1553, 1564 (7th Cir. 1990) (counsel was not ineffective for failing to file a meritless motion to suppress); *see also Rogers v. Wells*, 96 F.4th 1006, 1015 (7th Cir. 2024) ("[o]bviously, an attorney is not constitutionally deficient for failing to lodge a meritless objection") (quoting *Northern v. Boatwright*, 594 F.3d 555, 561, (7th Cir. 2010)). Therefore, the Wisconsin Court of Appeals reasonably concluded that Hatcher was not entitled to relief for this reason.

Finally, respondent argues that petitioner failed to prove that he was prejudiced as the result of his counsel's performance because, even assuming that a motion to suppress was filed and was successful, Hatcher's statement to Sergeant Schnurer still would have been admissible to impeach his testimony that T.T. was not too intoxicated to consent.

17

(Tr. 2a (dkt. #18-19) 29:8-13, 33:4–39:7, 46:19–47:1.)  *See Harris v. New York*, 401 U.S. 222, 226 (1971) ("The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."); *see also Michigan v. Henry*, 494 U.S. 344, 351 (1990) ("We have never prevented use by the prosecution of relevant voluntary statements by a defendant, particularly when the violations alleged by a defendant relate only to procedural safeguards that are 'not themselves rights protected by the Constitution,'" such as the *Miranda* rights).  In this case, the State did in fact use the statement in part to impeach Hatcher's testimony.  (Tr. 2a (dkt. #18-19) 67:23-68:1, 69:13-20.)  For this additional reason, Hatcher fails to show that his counsel was ineffective.  *See Price v. Washington*, 54 F. Supp. 2d 837, 840 (N.D. Ill. 1999) (concluding that a habeas petitioner failed to establish prejudice resulting from his attorney's failure to file a suppression motion where the statement would have been admissible for impeachment, even if the trial court had suppressed it as an initial matter); *see also Evans v. Davis*, 875 F.3d 210, 218 (5th Cir. 2017) ("[T]here can be no reasonable probability of a different result if the evidence would have come in anyway.").  Accordingly, Hatcher's petition for a writ of habeas corpus under 28 U.S.C. § 2254(d) must be denied.

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner.  To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274,

282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). The petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the United States Supreme Court. Because no reasonable jurist would debate whether the petition should have been resolved differently, the court will not issue petitioner a certificate of appealability.

ORDER

IT IS ORDERED that:

1. The habeas corpus petition filed by Mychael R. Hatcher (dkt. #14) is DENIED and this action is DISMISSED WITH PREJUDICE.
2. A certificate of appealability is DENIED.

Entered on this 4th day of March, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge